UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | BKY 07-33877 |
| Shaun Paul Bougie and Lisa Ann Bougie, | Chapter 7 |
| Debtors. | |
| Nauni Jo Manty, as Chapter 7 Trustee for the Bankruptcy Estate of Shaun Paul Bougie and Lisa Ann Bougie, | ADV 13-03218 |
| Plaintiff, | |
| v. | |
| Shaun Bougie, Camissa Colas, Jayme Bougie, Flagstar Bank, FSB, Asset Acceptance, LLC, and LVNV Funding LLC, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

At Minneapolis, Minnesota, May 16, 2014.

The court held a hearing on cross motions for summary judgment in the above adversary proceeding on April 2, 2014.

Jacqueline Williams appeared on behalf of the plaintiff, Nauni Jo Manti, chapter 7 trustee. Michael Kreun appeared on behalf of the defendant Flagstar Bank FSB. Camissa Abbot (formerly Camissa Colas) appeared pro se. Jayme Bougie appeared pro se.

This court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157(F) and 1334, Fed. R. Bankr. P. 7056 and 6001, and Local Rule 1070-1.

The court grants summary judgment to the plaintiff for the reasons stated below.

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *05/16/2014*
Lori Vosejpka, Clerk, by LH

1

All parties agree there are no factual disputes. Based on the submissions of the parties, the following facts are true:

## FACTS

This case concerns a single family residence located at 1289 Osceola Avenue, St. Paul, Minnesota. Camissa Abbot (formerly Camissa Colas), the debtor's sister, and Jayme Bougie, the debtor's brother, own the property along with the debtor. The property was conveyed to the brothers and sister on July 16, 2007, from the estate of their mother, Judith Bougie. They own it as tenants-in-common. The deed was recorded on July 30, 2007. Currently, Ms. Abbott, her family, and Jayme Bougie reside at the property; the debtor does not.

On August 10, 2007, the debtor, Ms. Abbot, and Jayme Bougie executed a mortgage in favor of Mortgage Electronic Registration Systems, Inc., encumbering the property. The mortgage was not recorded at that time.

Two months after signing the mortgage, the debtor filed his chapter 7 petition on October 17, 2007. The plaintiff was appointed chapter 7 trustee. The debtor did not disclose his interest in the 1289 Osceola Avenue property or the mortgage in the schedules, at the meeting of creditors, or at any other time. During the pendency of the bankruptcy case, the plaintiff had no knowledge of the property or mortgage. The debtor's case was closed on February 1, 2008.

The mortgage was recorded on October 31, 2008, fourteen months after it was executed and a year after the debtor filed his petition. The mortgage was later assigned by MERS to Flagstar Bank, FSB, on September 22, 2010.

Currently, there are two judgment liens on the property against Ms. Abbot. First, on December 10, 2008, a judgment was docketed in Ramsey County in favor of Asset Acceptance, for $2,924.30. Second, on July 2, 2009, a judgment was docketed in Ramsey County in favor of LVNV Funding LLC, for $6,359.65.

2

Both Ms. Abbot and Jayme Bougie filed for chapter 7 bankruptcy and received discharges. The 1289 Osceola Avenue property was listed on both of their schedules. Ms. Abbot filed on July 15, 2009, and Jayme Bougie filed on November 12, 2012.

On February 1, 2013, Flagstar Bank filed an application to reopen the debtor's bankruptcy case so it could move for relief from the automatic stay in order to foreclose on the property. The application was granted by court order on February 13, 2013.

The plaintiff filed this adversary proceeding on October 31, 2013, against the debtor, Ms. Abbot, Jayme Bougie, Flagstar Bank, Asset Acceptance, and LVNV Funding. The plaintiff seeks (1) authority to avoid the mortgage lien created by recording the mortgage; (2) authority to sell the 1289 Osceola Avenue property, including the interests of Jayme Bougie and Ms. Abbot; and (3) a determination that the judgments of Asset Acceptance and LVNV Funding only attach to the one-third interest of Ms. Abbot. Flagstar Bank, Ms. Abbot, and Jayme Bougie all answered the complaint on December 2, 2013. The debtor, Asset Acceptance, and LVNV Funding failed to file answers.

The plaintiff then filed two motions. First, a motion for default judgment was filed against the debtor, Asset Acceptance, and LVNV Funding on March 17, 2014. The second motion was for summary judgment against Flagstar Bank, Ms. Abbot, and Jayme Bougie on March 17, 2014. On March 28, 2014, Flagstar Bank responded to the motion for summary judgment and filed a cross-motion for summary judgment.

At the hearing on April 2, 2014, the court granted the motion for default judgment, but stayed enforcement of the judgment until further order of the court. The court requested further briefing from Flagstar Bank and the plaintiff. On April 22, 2014, the court took the summary judgment motions under advisement.

**MEMORANDUM**

3

Summary judgment is proper if the party seeking summary judgment "shows that there is no genuine dispute as to any material fact and . . . is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056 (making Fed. R. Civ. P. 56 applicable to bankruptcy proceedings).

Here, neither the plaintiff nor Flagstar Bank alleges any factual dispute. Ms. Abbot and Jayme Bougie also failed to raise any genuine issue of material fact at the hearing. As the only remaining issues involve questions of law, summary judgment is appropriate for this case. *Cremona v. R.S. Bacon Veneer Co.*, 433 F.3d 617, 620 (8th Cir. 2006).

I.    AVOIDANCE OF THE RECORDING OF THE MORTGAGE

The plaintiff seeks to avoid Flagstar Bank's mortgage lien, created by recording the mortgage, as a post-petition transfer under 11 U.S.C. § 549. Flagstar Bank contends that the avoidance of the mortgage lien under section 549 is time-barred by the statute of limitations found in subsection (d). If the plaintiff's action is not time-barred, however, the bank avers that the recording of the mortgage was not a post-petition transfer. Plaintiff argues that the statute of limitations was tolled because of the debtor's failure to include the 1289 Osceola Avenue property in his schedules. She asserts that she did not know about the property or mortgage until Flagstar Bank filed its motion to reopen.

    a.  **Statute of Limitations**

Under the statute of limitations contained in § 549, a party must take action to avoid a post-petition transfer prior to either two years after the transfer sought to be avoided or the close of the bankruptcy case, whichever occurs earlier. 11 U.S.C. § 549(d). Here, the transfer to be avoided, the recording of the mortgage, occurred on October 31, 2008. The debtor's case was closed on February 1, 2008. The plaintiff filed its complaint on October 31, 2013, approximately

4

five years after the close of the debtor's case and the recording of the mortgage. On its face, it appears that the § 549 limitations period has run.

The plaintiff argues that the §549 limitations period has not run because the doctrine of equitable tolling has extended it. Equitable tolling applies to § 549 because the doctrine "is read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). Under the doctrine, a limitations period is tolled when a party takes positive steps to conceal a fraud or when a fraud goes undiscovered without any action to conceal it. *Id.*; *see also Moratzka v. Pomaville (In re Pomaville)*, 190 B.R. 632, 637 (Bankr. D. Minn. 1995) (detailing the difference between positive concealment and negligent concealment).

The plaintiff alleges that the fraud at issue here was the debtor's failure to report his interest in the property or mortgage in his schedules, at the section 341 meeting, or at any other time during his bankruptcy case. This fraud went undiscovered until the time Flagstar Bank filed its application to reopen the case. Thus, the plaintiff argues, equitable tolling applies.

Flagstar Bank disagrees, asserting that the doctrine of equitable tolling cannot apply here because it did not commit a fraud or attempt to conceal a fraud. The fraud was the debtor's. Flagstar Bank is confusing equitable tolling with equitable estoppel. The doctrine of equitable estoppel requires a defendant to take active steps to prevent a plaintiff from taking timely action, but the doctrine of equitable tolling does not require misconduct on the part of a defendant. *Ramette v. Range Mental Health Center, Inc. (In re Ramette)*, No. 4-92-0288, 1997 WL 188449, *3-4 (Bankr. D. Minn. April 18, 1997); *see also In re Petters Co., Inc.*, 494 B.R. 413, 446 (Bankr. D. Minn. 2013) ("The application of equitable tolling does not require a showing of misconduct on the part of the defendant.").

Equitable tolling requires ignorance of a fraud and injury caused by that fraud. *Dring v. McDonnell Douglas Corp.*, 58 F. 3d 1323, 1328-29 (8th Cir. 1995). Courts require a showing of

5

due diligence as part of the proof of ignorance. *Jenkins v. Mabus*, 646 F.3d 1023, 1028 (8th Cir. 2011); *In re Bodenstein*, 253 B.R. 46, 50 (B.A.P. 8th Cir. 2000); *Pomaville*, 190 B.R. at 637. Here, the due diligence standard is met by the trustee's reliance on the debtor's schedules and statement of financial affairs because the debtor had a duty to fully and accurately disclose his financial information and property interests on his schedules and did not do so. *Pomaville*, 190 B.R. at 637; *Ramette*, 1997 WL 188449, *3-4; *Burtch v. Opus, L.L.C. (In re Opus East, L.L.C.)*, No. 11-52423, 2013 WL 4478914, *6 (Bankr. D. Del. August 6, 2013); *In re Dec*, 272 B.R. 218, 226 (Bankr. N.D. Ill. 2001); *In re Soost*, 290 B.R. 116, 126 (Bankr. D. Minn. 2003); *see also In re Barrows*, 399 B.R. 506, 510 (Bankr. D. Minn. 2009) ("The efficiency of the bankruptcy process depends on the accuracy and reliability of the petition . . ."). The disclosures are required in order to eliminate the necessity of an independent examination for facts and ensure the successful functioning of the bankruptcy act. *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992); *In re Mascolo*, 505 F.2d 274, 278 (1st Cir. 1974).

Here, the debtor failed to list his interest in the 1289 Osceola Avenue property or the mortgage on his schedules, at the meeting of creditors, or at any other time during the pendency of the case. Because of the debtor's actions, the plaintiff was unaware of the debtor's interest in the property or the mortgage. The bankruptcy estate was injured by the debtor's fraud because the property was not available for distribution.

In support of its argument against equitable tolling, Flagstar Bank cites Judge Kressel's ruling from the bench in *Stoebner v. Maeir (In re Rusch)*. Transcript at 33-34, No. 08-4153 (Bankr. D. Minn. Feb. 6, 2009), ECF No. 37. Judge Kressel did not toll the statute of limitations in § 549(d) under the doctrine of equitable tolling. He determined that the trustee did not satisfy

6

his burden because he failed to provide any facts or law justifying equitable tolling. *Id.* The case is distinguishable. Here, there are sufficient facts and law to justify equitable tolling.[1]

The court holds that section 549's limitations period was tolled in this case until the plaintiff discovered the fraud. The case was brought within eight months of that discovery, which is within the time period of § 549. The court now turns to the issue of whether the mortgage lien may be avoided.

### b. Avoidance under 11 U.S.C. § 549

The trustee may avoid an unauthorized transfer of property of the estate that occurs after the commencement of the case pursuant to 11 U.S.C. § 549. Both parties agree that a transfer may be avoided if: (1) the property was property of the estate; (2) the property was transferred; (3) the transfer was made post-petition; and (4) the transfer was not authorized by the bankruptcy code or the court. *Seaver v. New Buffalo Auto Sales, LLC*, 459 B.R. 6, 11 (B.A.P. 8th Cir. 2011) (citing *Nelson v. Kingsley (In re Kingsley)*, 208 B.R. 918, 920 (B.A.P. 8th Cir. 1997)).

#### 1. *Property of the Estate*

The parties disagree as to what constitutes property of the estate. The plaintiff cites 11 U.S.C. § 541, which defines "property of the estate" to include all legal and equitable interests of the debtor. Under this definition, the plaintiff contends the 1289 Osceola Avenue property is property of the bankruptcy estate. Flagstar Bank does not dispute that the 1289 Osceola Avenue property is part of the bankruptcy estate, rather, the bank contends that the mortgage itself is not property of the estate. The bank is correct; the mortgage is not property of the estate, but it does

---

[1] Flagstar Bank also makes a policy argument that equitable tolling would make all real property titles questionable because of <u>Minnesota Title Standards</u>, No. 82(2). However, No. 82(2) only contains the requirement to search for a bankruptcy in the prior two years. Minnesota State Bar Association, <u>Minnesota Title Standards</u>. It does not address marketability of title. The court rejects this argument.

7

not need to be for the plaintiff's action under § 549.[2]  The 1289 Osceola Avenue property itself is property of the estate, which satisfies the plaintiff's first burden under the statute.  *Schwab v. Reilly*, 560 U.S. 770, 774 (2010); *In re O'Brien*, 443 B.R. 117, 131 (Bankr. W.D. Mich. 2011) (holding that unscheduled property is property of the estate).

### 2. *Transfer of Property*

The term "transfer" is defined as the creation of a lien under 11 U.S.C. § 101(54)(A).  According to Minnesota law, the recording of a mortgage constitutes a transfer of an interest in a debtor's property.  *In re Alexander*, 219 B.R. 255, 258 (Bankr. D. Minn. 1998).  Consequently, Flagstar Bank's recording of the mortgage, creating a mortgage lien, constitutes a transfer of property.

### 3. *Post-Petition Transfer*

The debtor filed for chapter 7 protection on October 17, 2007.  Flagstar Bank recorded its mortgage on October 31, 2008, over a year after the filing of the debtor's case.  Thus, this transfer was made post-petition.

### 4. *Unauthorized Transfer*

Flagstar Bank was not authorized to transfer the mortgage post-petition, as it sought no court approval. Therefore, factor four is satisfied.

Because all four factors are met, the plaintiff has met her burden under 11 U.S.C. § 549(d) and the mortgage lien may be avoided.

---

[2] There is no dispute that Flagstar Bank holds a valid mortgage. *Mooty v. Union Bond & Mortgage Co.*, 231 N.W. 406, 407 (Minn. 1930) (holding a mortgage is valid even if it is unrecorded).  The issue here is the plaintiff's ability to avoid the <u>mortgage lien</u>.

8

## II. AUTHORITY TO SELL THE PROPERTY

The final issue is whether the trustee may sell the property, including the interests of the debtor's sister and brother.

A trustee may sell both the estate's interest and the interest of any co-owner of property pursuant to 11 U.S.C. § 363(h). In order to do so, the trustee must demonstrate that (1) partition of the property is impractical; (2) sale of the estate's undivided interest would realize significantly less than sale pf the property free of co-owner interest; (3) the benefit to the estate of a sale outweighs the detriment to the co-owners; and (4) the property is not used in the production of electric energy or natural gas. 11 U.S.C. § 363(h).

Ms. Abbot and Jayme Bougie failed to file any response to the motion, but both appeared and objected to the sale at the hearing. Flagstar Bank did not object to this portion of the plaintiff's motion, except to reiterate its argument that it holds a secured interest in the debtor's portion of any sale proceeds.

The court will address each element:

1. *Impractical Partition*

According to the Eighth Circuit in *In re Van Der Heide*, a single family home is incapable of partition as a matter of law. 164 F.3d 1183, 1184 (8th Cir. 1999). No party disputes that the 1289 Osceola Avenue property is a single family residence. The court is satisfied that partition of the property is impractical.

2. *Sale of Estate's Interest Realizes Significantly Less Than Sale of Assets Free from Co-Owner Interest*

The sale of an estate's interest in a single family residence is also generally accepted to result in a lower price than if the entire property is sold. The fact that the other owners continue to reside on the property has a chilling effect on the sale price. *In re Trout*, 146 B.R. 823, 829

9

(Bankr. D.N.D. 1992); *In re Wright*, No. 08-74863, 2009 WL 2384189, *3 (Bankr. W.D. Ark. July 31, 2009).  The plaintiff argues that the sale of the sale of the estate's interest in the 1289 Osceola Avenue property would generate substantially less than the sale of the property free from the interests of Ms. Abbot and Jayme Bougie.  The court agrees.  If the brother, sister, and her family continue to reside in the house, it is very unlikely that someone would purchase the estate's one third interest in the house.

   3. *Benefits to the Estate v. Detriment to Co-Owners*

Any analysis of the benefits to the bankruptcy estate and the detriment to the co-owners of the property is fact intensive.  *In re Trout*, 146 B.R. 823, 829 (Bankr. D.N.D. 1992).  The sale of the property in its entirety would result in the estate receiving one-third of the sale proceeds.  In light of the court's ruling regarding the perfection of Flagstar Bank's lien, the estate's interest in the sale proceeds would be lien free and would be used to pay unsecured creditors.[3]

Weighed against this benefit is the detriment to Jayme Bougie and Ms. Abbot as co-owners of the property.  According to their statements in court, both Jayme Bougie and Ms. Abbot reside at the property, with Ms. Abbot's husband and two children, and both are in difficult financial situations.  The sale of the property would force them to move out of their home.  The court is sensitive to their hardship.  However, Flagstar Bank is seeking relief from the automatic stay in this case in order to foreclose on the property because the debtor, Ms. Abbot, and Jayme Bougie are in default of the mortgage.[4]  Foreclosure by Flagstar Bank results in the same harms to Ms. Abbot and Jayme Bougie as a sale by the trustee.  Moreover, Ms.

---

[3] Flagstar Bank's claim would be treated as an unsecured claim in the debtor's bankruptcy case.
[4] Ms. Colas and Mr. Bougie blame the debtor for the default, but the end result is still the same. Flagstar Bank is prepared to foreclose based on the default.

Abbot and Jayme Bougie each would own a one-third interest in the sale proceeds[5] and retain the right of first refusal to purchase the property. In light of these undisputed facts, the court finds that the benefit to the estate outweighs the detriment to the co-owners.

4. *Production of Electric Energy or Natural Gas*

Finally, it is undisputed that the property is not used for the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas.

All four of the elements of section 363(h) are met. Therefore, the court authorizes the plaintiff to sell the property, including all interests of the debtor, Ms. Abbott, and Jayme Bougie.

**CONCLUSION**

Summary judgment is proper in this case because there is no dispute as to any material facts. The plaintiff's cause of action is not barred by 11 U.S.C. § 549(d) because of the doctrine of equitable tolling. The plaintiff may avoid Flagstar Bank's recording of the mortgage. The plaintiff satisfied the requirements of 11 U.S.C. § 363(h) and is authorized to sell the property, including the interests held by Ms. Abbot and Jayme Bougie.

**IT IS ORDERED**:

1. The mortgage lien against Shaun Bougie's one-third interest in the property held by Flagstar Bank, FSB is avoided.

2. Shaun Bougie, Camissa Abbot, and Jayme Bougie shall immediately surrender the property to the plaintiff.

---

[5] Ms. Abbott's and Jaymie Bougie's interests may be subject to liens. The court makes no determination about any such liens.

11

3. The plaintiff is authorized to sell the interests of the bankruptcy estate, Camissa Abbot, and Jayme Bougie, subject to the right of first refusal granted to Jayme Bougie and Ms. Abbot.

4. The plaintiff is authorized to pay all costs associated with the sale of the property out of the proceeds of the sale.

5. The plaintiff is authorized to retain one-third of the net proceeds after sale costs and shall distribute one-third of the net proceeds available after payment of all costs associated with the transaction to Jayme Bougie and one-third of the proceeds to Camissa Abbot. The proceeds may be subject to liens.

6. The stay of judgment issued in the court's order granting default judgment against the debtor, Asset Acceptance, LLC, and LVNV Funding, LLC is lifted.

/e/ Kathleen H. Sanberg
Kathleen H. Sanberg
United States Bankruptcy Judge